## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elba Jimenez, as Guardian ad litem on Behalf of A.J. (minor)<br>Plaintiff, | : : : : | No. 19-cv-4071-RK |
| v. | : : : | Honorable Robert Kelly, J. |
| School District of Philadelphia and Camelot Education and ABC Corporation 1-through 3<br>Defendants. | : : : : : | |

### Order

**AND NOW**, this            day of                    , 2019, upon consideration of the

Motion to Dismiss Plaintiff's Complaint Pursuant to FED R. CIV. P. 12(b)(6) and to Strike

Scandalous and Impertinent Allegations Pursuant to FED. R. CIV. P. 12(f) filed by Defendant,

Camelot Education, and any response thereto, it is hereby **ORDERED** and **DECREED** that the

Motion is **GRANTED**.

- Plaintiff's claims against Defendant, Camelot Education, are hereby **DISMISSED** with prejudice;

- Counts 11, 14, 15, and 16 of Plaintiff's Complaint are hereby **STRICKEN**.

**BY THE COURT:**

_____
Hon. Robert Kelly, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Elba Jimenez, as Guardian ad litem on Behalf of A.J. (minor) | : | No. 19-cv-4071-RK |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Honorable Robert Kelly, J. |
| School District of Philadelphia and Camelot Education and ABC Corporation 1-through 3 | : | |
| Defendants. | : | |

**Defendant, Camelot Education's Motion to Dismiss Plaintiff's
Complaint Pursuant to FED R. CIV. P. 12(b)(6) and Motion to Strike
<u>Scandalous and Impertinent Allegations Pursuant to FED R. CIV. P. 12(f)</u>**

***AND NOW***, comes Defendant, Camelot Education (hereinafter "Defendant"), by and through its undersigned counsel, and moves this Honorable Court to dismiss Plaintiff's Complaint pursuant to FED R. CIV. P. 12(b)(6) and to strike scandalous and impertinent allegations pursuant to FED R. CIV. P. 12(f), and in support thereof avers as follows:

1.     On January 22, 2019, Plaintiff, Elba Jimenez, as Guardian *ad Litem* on behalf of A.J. (minor) (hereinafter "Plaintiff"), filed a Writ of Summons in the Court of Common Pleas of Philadelphia County, Pennsylvania, docketed as January Term, 2019, No. 1988.

2.     On August 27, 2019, Plaintiff filed a Complaint in the aforementioned action, alleging claims for negligence and violations of civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

3.     Plaintiff's Complaint alleges that A.J. was subject to assault by a security guard for Defendant before and during the period of time in which A.J. was enrolled in Camelot Academy.

4.      Plaintiff's Complaint alleges claims for: 1) negligence; 2) violations of A.J.'s Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; and 3) assault and battery.

5.      Defendant is immune to Plaintiff's claims for negligence and assault and battery pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, *et seq.*

6.      Plaintiff's Complaint fails to set forth any facts to establish the existence of a policy, procedure, or custom sufficient to state a claim for *Monell* liability.

7.      Defendants now move for dismissal of Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim for which relief may be granted.

8.      Plaintiff's Complaint contains allegations of improper financial oversight relating to the contract between Camelot and ASPIRA, Inc., the entity that runs the Aspira Academy.

9.      These allegations have absolutely no connection to the claims raised by Plaintiff, but exist solely in an attempt to cast Camelot in a negative light.

10.      As these allegations were improperly included in the Amended Complaint, they should be stricken pursuant to FED R. CIV. P. 12(f).

**WHEREFORE**, Defendant respectfully requests that this Honorable Court grant this Motion and dismiss all Counts of Plaintiff's Complaint with prejudice pursuant to FED R. CIV. P. 12(b)(6) and that the scandalous and impertinent allegations be stricken from the record.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By:

Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:      (215) 5879456
Email:  rjennings@dmvlawfirm.com

Attorney for Defendant,
Camelot Education

Date: 9/13/19

## Certificate of Service

I, Rufus A. Jennings, hereby certify that, on the date set forth below, I did cause a true and correct copy of Defendant, Camelot Education's Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6) and to Strike Scandalous and Impertinent Allegations Pursuant to FED. R. CIV. P. 12(f) and Memorandum of Law in Support thereof to be served on the following individuals via first-class mail:

Glenn A. Ellis, Esquire
**FREIWALD LAW, P.C.**
1500 Walnut Street, 18th Floor
Philadelphia, PA 19102

Elba Jimenez
4618 Leiper Street, Apt. 2B
Philadelphia, PA 19124


Rufus A. Jennings, Esquire

Date: 9/13/19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elba Jimenez, as Guardian ad litem on Behalf of A.J. (minor) | : | No. 19-cv-4071-RK |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Honorable Robert Kelly, J. |
| School District of Philadelphia and Camelot Education and ABC Corporation 1-through 3 | : | |
| Defendants. | : | |

**Memorandum of Law in Support of Defendant, Camelot Education's Motion to Dismiss Plaintiff's Complaint Pursuant to FED R. CIV. P. 12(b)(6) and Motion to Strike Scandalous and Impertinent Allegations Pursuant to FED R. CIV. P. 12(f)**

**AND NOW**, comes Defendant, Camelot Education (hereinafter "Defendant" or "Camelot"), by and through its undersigned counsel, and submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to FED R. CIV. P. 12(b)(6) and Motion to Strike Scandalous and Impertinent Allegations Pursuant to FED R. CIV. P. 12(f).

### I.   Introduction and Procedural Background

Plaintiff, Elba Jimenez (hereinafter "Plaintiff") filed this action on behalf of her grandson, A.J. After filing a Writ of Summons on January 22, 2019, Plaintiff finally filed a Complaint on August 27, 2019. Plaintiff's Complaint alleges claims relating to a reported assault and harassment by a security guard at the Olney Charter High School (formerly Olney High School) in Philadelphia. Plaintiff alleges claims against Camelot for: 1) negligence; 2) violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and 3) assault and

battery.  Plaintiff's Complaint also contains wholly-unrelated allegations of financial impropriety between Camelot and ASPIRA, Inc., the entity that runs the Olney Charter High School.

On September 5, 2019, Camelot removed this lawsuit to the United States District Court for the Eastern District of Pennsylvania.  For the reasons set forth herein, Camelot now moves for dismissal of Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) and to strike the scandalous and impertinent allegations pursuant to FED. R. CIV. P. 12(f).

## II.  <u>Allegations of the Complaint</u>[1]

While not a model of clarity, Plaintiff's Complaint appears to set forth the following factual allegations:

- ASPIRA, Inc., operated the Olney Charter High School in Philadelphia, Pennsylvania.[2]

- ASPIRA, Inc., contracted with Camelot to operate a transition program for students with disciplinary issues inside the Olney Charter High School.[3]

- For the 2016-2017 school year, A.J. was enrolled in the Olney Charter High School.[4]

- "Defendant John Doe was a security guard at the Camelot Academy."[5]

- On January 24, 2017, A.J. was in class at the Olney Charter High School.[6]

- A dispute arose between A.J. and his teacher about whether A.J. would be allowed to leave the classroom to use the bathroom.[7]

- Plaintiff alleges that the teacher pushed A.J.[8]

---

[1] For the purposes of a motion filed pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept the factual allegations contained in the Amended Complaint as true.  *See e.g. Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008).  Nothing contained in these moving papers shall be construed as an admission to any such allegations.
[2] Plaintiff's Complaint, attached hereto as Exhibit "A", at ¶ 13.
[3] Exhibit "A", at ¶¶ 9, 13.
[4] Exhibit "A", at ¶ 19.
[5] Exhibit "A", at ¶ 17.
[6] Exhibit "A", at ¶ 22.
[7] Exhibit "A", at ¶¶ 23-25.

- John Doe, a "member of school security," arrived in the classroom and engaged in a verbal altercation with A.J.[9]

- John Doe grabbed A.J. and "attempted to push him into the hallway."[10]

- "John Doe grabbed [A.J.] and attempted to push him into a storage closet … where he could continue his assault."[11]

- "After stopping his assault on [A.J.], Defendant John Doe pushed [A.J.] to the ground and placed him in handcuffs with the hands behind the back."[12]

- "Once handcuffed…, Defendant John Doe repeatedly lifted and dropped [A.J.] by his arms."[13]

- Subsequently, A.J. was enrolled in the Camelot transition program.[14]

- "John Doe continue to harass and bully [A.J.]."[15]

- "[Plaintiff] informed the Defendants of the harassment and bullying.  Defendants did nothing to fix the situation."[16]

## III.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations, … it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 139 L.Ed.2d 868 (2009), *citing Bell Atlantic Corp. v.*

---

[8] Exhibit "A", at ¶ 26.
[9] Exhibit "A", at ¶ 27.
[10] Exhibit "A", at ¶ 28.
[11] Exhibit "A", at ¶ 29.
[12] Exhibit "A", at ¶ 30.
[13] Exhibit "A", at ¶ 30.
[14] Exhibit "A", at ¶ 38.
[15] Exhibit "A", at ¶ 39.
[16] Exhibit "A", at ¶ 40.

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint that offers nothing more than "'labels and conclusions[,] ... a formulaic recitation of the elements of a cause of action ... [or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. *Iqbal*, 129 S. Ct. at 1949, *citing Twombly*, 550 U.S. at 557. Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under the *Twombly/Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. First, the Court must identify and disregard allegations that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Indeed, as both *Twombly* and *Iqbal* made clear, a Court need not consider allegations in the Complaint that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *See Twombly*, 550 U.S. at 556 (explaining that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3rd Cir. 2004) ("In ruling on a Rule 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations."). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. If the factual allegations, assumed to be true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. *See Id.*

In addition, the Court need not "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997). In ruling on a 12(b)(6) motion, Courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "legal conclusions cast in the form of actual allegations." *Id.* at 906, n. 8. A Court is not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations. *Baraka v. McGreevy*, 481 F. 3d 187, 211 (3rd Cir. 2007). As Plaintiff's claims against Defendant, as set forth in Plaintiff's Complaint, fails to state a plausible cause of action for which relief may be granted, Plaintiff's Complaint should be dismissed with prejudice.

## IV.   <u>Legal Argument</u>

### a.   *Plaintiff's State-Law Claims are Subject to Immunity Pursuant to the Pennsylvania Political Subdivision Tort Claims Act*

As Camelot was working as a contractor for a charter school, and because Camelot's activities at the Olney Charter High School are intertwined with the Philadelphia School District, the Pennsylvania Political Subdivision Tort Claims Act bars Counts I and III of Plaintiff's Complaint. Pursuant to 42 Pa. C.S. § 8541, "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property

caused by any act of the local agency or an employee thereof or any other person."[17]   In *Walker v. Lawrence*, 900 A.2d 980 (Pa. Cmwlth. Ct. 2006),[18]   the Pennsylvania Commonwealth Court held, unequivocally, that charter schools and their employees are entitled to immunity under the Tort Claims Act.   In that decision, the Commonwealth Court determined that a charter school and a public school were "closely 'intertwined'" for purpose of the Tort Claims Act.   *See also Babb v. Plusa*, 2016WL 100184, \*3 (Pa. Cmwlth. Ct. January 6, 2016) ("To be entitled to immunity under the Tort Claims Act … the entity is so intertwined with government that extending immunity to the entity would serve the purposes of the Tort Claims Act." (*internal quotations marks omitted*).

In this case, Plaintiff has alleged that Camelot was hired as a contractor of ASPIRA, Inc., to operate a disciplinary transition program within a charter school.   The Complaint expressly alleges that Camelot was acting under color of law."[19]   From the allegations of Plaintiff's Complaint, it appears that Plaintiff alleges that John Doe, the security guard who allegedly assaulted Plaintiff, worked both inside Olney Charter High School and the "Camelot Academy." Plaintiff also references and incorporates the policies of the Philadelphia School District as the basis for her claim for negligence.[20]   According to Plaintiff, Camelot's program was integral to the operations of the charter school, Camelot's operations were controlled by the policies of the Philadelphia School District, and Camelot's operations took place within the physical confines of

---

[17] None of the exceptions to this immunity set forth in 42 Pa. C.S. § 8542 are applicable to Plaintiff's claims in this case – 1) vehicle liability; 2) care custody, or control of personal property; 3) real property; 4) trees, traffic controls, and street lighting; 5) utilities service facilities; 6) streets; 7) sidewalks; and 8) care, custody, and control of animals.
[18] "Absent a definitive statement of the applicable law by the state's highest court, a district court may also consider the decisions of state intermediate appellate courts in order to facilitate its prediction [as to how an issue of state law should be resolved]."   *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 189 (3rd Cir. 1998).
[19] Exhibit "A", at ¶ 51.
[20] Exhibit "A", at ¶¶ 34-37.

the Olney Charter High School.  Under such circumstances, Camelot is entitled to immunity

under the Tort Claims Act with regard to Plaintiff's state law claims.[21]

  ***b. Plaintiff's Complaint Fails to Set Forth Facts to Sustain a Plausible Claim of Negligence Against Camelot***

   Count I of Plaintiff's Complaint alleges a claim for common-law negligence.  While this

claim purports to allege a claim against Camelot, the claim itself is devoid of any factual basis

for such a claim.  In support of Count I, Plaintiff alleges:

> 42. At all times relevant, ***the District*** is responsible to provide security and safe guards for children attending Philadelphia area schools and restrict access to visitors, invitees and others to Olney High School campus and property.

> 43. Defendant ***School District of Philadelphia*** was negligent as follows:

> > (a) failing to provide adequate security to protect students, visitors and invitees, including A.J.;

> > (b) failure to have security personnel appropriate to the task of protecting students, visitors and invitees, including A.J.;

> > (c) failure to have security personnel respond to the assault and battery that occurred on January 24, 2017;

> > (d) failure to protect A.J. from harm while she [*sic*] was attending Olney High School campus;

> > (e) failure to take all reasonable steps necessary to protect the health and well-being of A.J. while attending Olney High School campus;

> > (f) failure to take all reasonable steps to prevent visitors from assaulting students on the Olney High School campus; and

---

[21] Under the Tort Claims Act, there is absolute immunity to a covered entity with regard to allegations of intentional torts.  *See e.g. Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 375 (E.D. Pa. 2012) ("[T]he Tort Claims Act shields local government entities from liability for the intentional torts of their employees.")

> (g)     failure to take all reasonable and necessary steps to prevent personnel of Olney High School from assaulting A.J.
>
> 44.     As a result of the negligence of Defendant **School District of Philadelphia**, Plaintiff A.J. suffered the injuries and losses described above.
>
> 45.     The negligence of **Olney High School** was a substantial factor in causing the injuries and losses sustained by A.J.[22]

There is not a single allegation relating to any purported negligence on behalf of Camelot.

Pursuant to FED. R. CIV. P. 8(a)(2), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." While this standard is less strict than the fact pleading requirement in the state court in which this action originally was filed, the Federal Rules of Civil Procedure still require that "that the defendants have been provided with adequate notice so that they can answer the complaint." In this case, Plaintiff's claim for negligence, while ostensibly filed against Camelot, only includes claims that the School District of Philadelphia acted in a negligent manner. Under such circumstances, Plaintiff cannot sustain any claim against Camelot under this theory.

### c.     *Camelot is not Liable for the Intentional Torts of an Employee of the School District*

Count III of Plaintiff's Complaint alleges a claim of assault and battery against Camelot. The basis for this claim lies in Paragraph 64 of the Complaint – "Defendants School District of Pennsylvania and Camelot Education allowed personnel to physically assault A.J., as described above, intentionally, directly and proximately causing physical and emotional injury to him."[23] On its face, this claim appears to replicate the negligence claim set forth in Count II. However,

---

[22] Exhibit "A", at ¶¶ 42-45 (*emphasis added*).
[23] Exhibit "A", at ¶ 64.

to the extent that Plaintiff actually intends to plead an intentional tort against Camelot based on the actions of a security guard, such claim is fatally flawed.

In her Complaint, Plaintiff alleges that, on January 24, 2017, A.J. was a student at the Olney Charter High School.[24]   A.J. was not enrolled at the Camelot Academy until after the alleged incident took place.[25]   According to Plaintiff, the School District of Philadelphia is responsible for providing security at the Olney Charter High School.[26]   There is no allegation that John Doe was employed by Camelot, or that Camelot had any ability to control John Doe's conduct on January 24, 2017.  Under such circumstances, Camelot cannot be held liable for the actions of an individual outside its employment and control.

To the extent that Plaintiff's Complaint does intent to assert that John Doe was employed by Camelot,[27] such claim still would be without merit.  Under Pennsylvania law:

> It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.  In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee.  The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Costa v. Roxborough Memorial Hospital*, 708 A. 2d 490, 493 (Pa. Super. Ct. 1998) (*internal citations omitted*).

> Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally

---

[24] Exhibit "A", at ¶ 19.
[25] Exhibit "A", at ¶ 38.
[26] Exhibit "A", at ¶ 42.
[27] As Plaintiff is aware, such an allegation would be patently false and a violation of FED. R. CIV. P. 11(b).

> without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment.

*Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979). In this case, Plaintiff alleges that John Doe (an employee of the School District of Philadelphia) assaulted A.J. because he asked to use the restroom. The Complaint alleges that the assault included dragging A.J. to a closet, although there are no allegations detailing how, exactly, A.J. was assaulted. At the time this incident allegedly took place, A.J. was not enrolled with Camelot. As such, to the extent that John Doe assaulted A.J., the act could not possibly have been the scope of any employee of Camelot. Plaintiff effectively has alleged that an employee of Camelot assaulted an individual with whom there was no professional relationship. Camelot cannot be held liable for this act any more than it could be held liable for an alleged assault that took place away from the workplace and after hours. As such, Plaintiff's claim for assault and battery must be dismissed.

### d.    *Plaintiff's Complaint Fails to State a Plausible Claim Under 42 U.S.C. § 1983*

Count II of Plaintiff's Complaint alleges a claim against Camelot pursuant to 42 U.S.C. § 1983. This claim appears to be based on the substantive due process protections of the Fourteenth Amendment. According to the Complaint:

> 53.    The specific harm to which Defendants School District of Philadelphia and Camelot Education exposed A.J. was foreseeable and direct in that they were aware that giving access to pupils to unidentified and otherwise unverified adults would result in harm to those pupils, including but not limited to physical and sexual assault.

> 54.    Defendant School District of Philadelphia's willful actions in allowing students to be supervised and educated by security personnel instead of certified teachers created a degree of culpability that shocks the conscience.

55.     Defendant School District of Philadelphia and Defendant Camelot Education acted in willful disregard to the safety of A.J. when the allowed security personnel to supervise his classroom.

56.     Defendant School District of Philadelphia's self-described commitment to create a safe, positive environment for all students formed a relationship such that A.J. was a foreseeable victim of Defendants School District of Philadelphia and Camelot's acts.

57.     Defendants School District of Philadelphia and Camelot's acts constitute a "state created danger," rendering them liable to A.J. for violation of his civil rights.

58.     Despite their awareness of the risk of pupil assault by unidentified individuals, policymakers within Defendant School District of Philadelphia either deliberately chose not to train their employees, including Ms. Burns, regarding policies for access to pupils during the school day, or acquiesced in a longstanding practice or custom by this inaction on this regard.

59.     Despite their awareness of the risk of pupil assault by security personnel, policymakers within Defendant School District of Philadelphia and Camelot Education Commission [*sic*] either deliberately chose not to supervise their employees or acquiesced in a longstanding practice or custom of inaction in this regard.[28]

These allegations do not provide any cognizable theory of liability with regard to Camelot.

As the Complaint alleges a criminal act by a third party (John Doe), Camelot has no liability under § 1983.  In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court held that:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.  Nor does

---

[28] Exhibit "A," at ¶¶ 53-59.  As noted above, Plaintiff's Complaint is not a model of clarity.  Several of these paragraphs appear to have been copied and pasted from other pleadings, as they do not have any apparent connection to the facts pled in the Complaint.

> history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression. Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. ... As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 195-96 (*internal citations and quotation marks omitted*). This general rule is subject to only two (2) narrow exceptions. As noted by the Third Circuit in *Ye v. United States*, 484 F.3d 634 (3rd Cir. 2007), "There are, however, two exceptions to this rule: the 'special relationship' exception and the 'state-created danger' exception."

Initially, Plaintiff cannot establish the existence of any "special relationship." As noted in *DeShaney*:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.,* food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the

> individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the deprivation of liberty triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 199-200. The Third Circuit has been clear that this exception does not apply to public schools. In *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3rd Cir. 1992), the Third Circuit addressed a similar claim in which public school students alleged that they were molested by other students. In ruling that the "special relationship" exception did not apply, the Third Circuit was clear that, "Our court has read *DeShaney* primarily as setting out a test of physical custody." *Id.* at 1370. Working from this assumption, the court continued:

> Here, it is the parents who decide whether … education will take place in the home, in public or private schools or, as here, in a vocational-technical school. For some, the options may be limited for financial reasons. However, even when enrolled in public school parents retain the discretion to remove the child from classes as they see fit.

> * * *

> By requiring D.R to attend assigned classes at Middle Bucks as part of her high school educational program, and authorizing officials to engage in disciplinary control over the students, the school defendants did not restrict D.R.'s freedom to the extent that she was prevented from meeting her basic needs. Thus, the school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*, particularly when their channels for outside communication were not totally closed.

*Id.* at 1371-72. This continues to be the law in the Third Circuit. No matter how Plaintiff attempts to frame the issue, Camelot cannot be held liable for the criminal acts alleged to have been committed by John Doe. As such, any claim premised on the special relationship exception must fail.

Neither can Plaintiff succeed on a "state-created danger" theory. "Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriment in terms of exposure to danger." *D.R.*, at 1374. The Third Circuit has set forth the following elements to establish a state-created danger:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County,* 443 F.3d 276, 281 (3rd Cir.2006). In this case, Plaintiff has not pled any facts which would support a claim that any affirmative act by any Defendant increased A.J.'s risk of exposure to harm, or that such increased exposure actually led to the harm alleged. Instead, Plaintiff cites to an alleged failure to supervise. This is insufficient to establish a claim, as the exception requires affirmative action.

Initially, as set forth above, Plaintiff has affirmatively pled that, at the time of the alleged assault, A.J. was not yet enrolled with Camelot, and that John Doe was an agent of the School District of Philadelphia. As such, it is not plausible that Camelot had any ability to control his conduct or any obligation to protect a non-student.

Further, the Third Circuit has explained that the requirement for affirmative action "ensures that defendants are only liable for misuse of state authority, rather than a failure to use it. Because there is inherent difficulty in drawing a line between an affirmative act and a failure

- 14 -

to act, we have found it useful to evaluate whether the state actor's exercise of authority resulted in a departure from the status quo." *Gayemen v. School District of Allentown*, 712 Fed. Appx. 218, 220 (3rd Cir. 2017) (*internal citations and quotation marks omitted*). In *Gayemen*, the plaintiff alleged that the school district had failed to take appropriate steps to address gang violence in schools. The Third Circuit rejected this argument, holding:

> As Gayemen himself puts it, he alleges "the failure of the School District to take appropriate steps to address the student affiliated gang violence." But that is just what the Due Process Clause does not protect. The allegation does not entail any departure from the status quo. Gayemen has not identified any action that rendered him more vulnerable to danger than had the state not acted at all.

*Id.* at 220-21 (*internal citations and quotation marks omitted*). Plaintiff alleges only that Camelot failed to supervise John Doe. As a matter of law, such failure, even if true, would not constitute an affirmative act.

Further, Plaintiff has not pled any conduct that meets the standard of shocking the conscience. This standard is far higher than anything set forth in the Amended Complaint. In *D.R.*, there were allegations that, before a student was sexually assaulted by another student, she told a school administrator that a student was trying to force her into a bathroom to engage in sexual conduct, and that nothing was done  The Third Circuit held:

> We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances. Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation.

*Id.* at 1376. Here, the Complaint appears to allege that John Doe, who did not work for Camelot, assaulted A.J., who was not a student of Camelot. There is no act that is alleged by Camelot that

could lead to any theory of liability, let alone one that would shock the conscience.  As such, there is no factual basis for Plaintiff's § 1983 claim.

Further, there are insufficient facts alleged to give rise to a *Monell* claim against Camelot. The Supreme Court has been clear that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A claim under 42 U.S.C. § 1983 cannot be based on a theory of *respondeat superior*, whether such claim is brought against a local government, or such claim is brought against an individual. *Monell vs. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3rd Cir. 1976); *Payton v. Vaughn*; 798 F. Supp. 258, 260 (E.D. Pa. 1992); *Rode v. Dellarciprete*, 845 F.2d. 1195, 1207 (3rd Cir. 1988); *Bey v. Pennsylvania Department of Corrections*, 98 F. Supp. 2d 650 (E.D. Pa. 2000); *Despaigne v. Crolew*, 89 F. Supp. 2d 582 (E.D. Pa. 2000).  A local government "must have known of its agent's action and approved it" for liability to attach. *Duffy v. County of Bucks*, 7 F. Supp. 2d 569, 578 (E.D. Pa. 1998).  As the Supreme Court has made clear:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

Municipal liability can only be established when the action complained of executes or implements a policy or decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy. *Monell*, 436 U.S. at 690-691; *see also McMillian v. Monroe County*, 520 U.S. 781, 784, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).   As the Third Circuit has noted:

> Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action, issues an official proclamation, policy, or edict.   A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3rd Cir. 1996) , *certiorari denied*, 117 S. Ct. 1086 (1997) (*internal quotations omitted*).   Furthermore, "[p]roof only of the existence of an unlawful policy or custom is not sufficient … to impose municipal liability under section 1983.   A plaintiff also must establish that the government policy or custom was the proximate cause of the injuries sustained." *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3rd Cir. 1996) (*citation omitted*).

Initially, a claim under *Monell* is wholly dependent on the existence of an underlying constitutional violation. *See e.g. Blakney v. City of Philadelphia*, 2014 U.S. App. LEXIS 5132, *11 (3rd Cir. March 19, 2014).   In this case, there is no evidence that any employee of Camelot engaged in any improper conduct.   As such, Plaintiff's § 1983 claim must fail.

Further, in order to sustain a *Monell* claim, Plaintiff must proffer evidence that some policy or procedure was the actual cause of a deprivation of rights. *See e.g. Blasi v. Borough of Pen Argyl*, 2015 WL 4468717, *5 (E.D. Pa. July 23, 2015).   As set forth above, Plaintiff's sole theory against Camelot appears to be there was a failure to supervise John Doe, an employee of

the School District of Philadelphia.   However, there are no facts pled to support this theory. Plaintiff has not set forth any factual basis to suggest that Camelot, which did not employ John Doe and which was not responsible for A.J. at the time of the incident, had any ability to supervise or control John Doe, or that it had any reason to believe that John Doe posed any risk to A.J.  In the absence of any factual allegation to suggest that Camelot actually had any policy, practice, or custom that led to A.J.'s claimed injuries, Plaintiff's § 1983 claim must fail.

### e.   *The Scandalous and Impertinent Allegations of Plaintiff's Complaint Must Be Stricken*

In the Complaint, Plaintiff makes a series of allegations regarding the financial arrangement between ASPIRA, Inc., and Camelot, and makes various allegations of financial impropriety.  These allegations, which will not be repeated, appear at Paragraphs 11, 14, 15, and 16 of Plaintiff's Complaint.  As these allegations have no rational relationship to Plaintiff's claims, they should be stricken as scandalous and impertinent.

Pursuant to FED. R. CIV. P. 12(f), "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Immaterial matter is that which has no essential or important relationship to the claim for relief.  A scandalous matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  *Dombrowski v. Governor Mifflin School District*, 2012 WL 2501017, *1 (E.D. Pa. June 29, 2012).  When evaluating a Motion to Strike pursuant to Rule 12(f), allegations which "reflect cruelly upon the defendant's moral character" are scandalous in nature.  *Claude Worthington Benedum Foundation v. Harley*, 2013 WL 2458457, *17 (W.D. Pa. June 6, 2013) (*internal quotation marks omitted*).  Additionally, the "purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *Dombrowski*, at *1 (*internal quotation marks omitted*).

This case involves an alleged physical assault against A.J. by an unnamed security guard for the School District of Philadelphia. It alleges claims for negligence, assault and battery, and violations of substantive due process. The financial arrangement between Camelot and ASPIRA, Inc., and an audit of Camelot's finances have absolutely no rational connection with these claims. Further, it is clear that the allegations were included for the sole purpose of trying to embarrass Camelot and cast it in a negative light. These are precisely the types of allegations that Rule 12(f) was intended to address. As such, Paragraphs 11, 14, 15, and 16 of Plaintiff's Complaint should be stricken.

## V.     **Conclusion**

In light of the foregoing, it is clear that Camelot is entitled to immunity from Plaintiff's state law tort claims and that Plaintiff has failed to allege sufficient facts to set forth a plausible *Monell* claim. As such, Defendant's Motion should be granted and Plaintiff's Complaint must be dismissed. Further, as the scandalous and impertinent allegations of the Complaint have no bearing on the facts underlying Plaintiff's claims, such allegations should be stricken.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By: _____

Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:      (215) 587-9456
Email:  rjennings@dmvlawfirm.com

Attorney for Defendant
Camelot Education

Date: 9/13/19

- 19 -

# Exhibit
## "A"

**FREIWALD LAW, P.C.**
By:   Glenn A. Ellis
       gae@freiwaldlaw.com
       Attorney ID No.: 93777
1500 Walnut Street
Eighteenth Floor
Philadelphia PA 19102
(215) 875-8000

*Filed and Attested by the
Office of Judicial Records
27 AUG 2019 04:59 pm
A. STAMATO*

Attorney for Plaintiffs

---

ELBA JIMENEZ, as Guardian ad litem on
behalf of A.J. (minor)
4618 Leiper Street, Apt. 2B
Philadelphia, PA 19124

       v.

SCHOOL DISTRICT OF PHILADELPHIA
44 North Broad Street
Philadelphia, PA 19130
      and
CAMELOT EDUCATION
7500 Rialto Blvd
Building 1, Suite 260
Austin, TX 78735
      and
ABC CORPORATION 1-through 3

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

January Term, 2019
No. 1988

---

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

Case ID: 190101988

## CIVIL ACTION - COMPLAINT

Plaintiff, Elba Jimenez, as Guardian ad litem of A.J., a minor, by and through her attorneys at Freiwald Law P.C., alleges as follows:

### I.    PARTIES

1.      Plaintiff Elba Jimenez is the grandmother and Guardian ad litem of A.J., a minor, who is an adult citizen and resident of the Commonwealth of Pennsylvania, who can be contacted through her counsel located at 1500 Walnut St., 18th Floor, Philadelphia PA 19102.

2.      Plaintiff, A.J. is a minor citizen of the Commonwealth of Pennsylvania (d.o.b. August 6, 2002), of Puerto Rican and African-American descent, who can be contacted through his counsel located at 1500 Walnut St., 18th Floor, Philadelphia PA 19102 and is currently a student at Esperanza Academy Charter High School.

3.      Defendant School District of Philadelphia is a municipal corporation or other entity organized and existing under and by the virtue of the laws of the Commonwealth of Pennsylvania.

4.      At all times material hereto, Defendant School District of Philadelphia's mission and sole goal has been to provide educational services to minor children in Philadelphia County.

5.      At all times material hereto, Defendant School District of Philadelphia adopted and enforced rules and regulations for management of school affairs and the conduct and deportment of employees and students.

6.      At all times material hereto, Defendant School District of Philadelphia has owned, operated, maintained, was responsible for, and/or otherwise controlled and is responsible for the operation of the Camelot Academy (a.k.a. Aspira Academy) located at Olney High School.

Case ID: 190101988

7.     At all times material hereto, Defendant School District of Philadelphia created, adopted and enforced rules and regulations for the management of school affairs and the conduct and of employees and students assigned to the Camelot Academy (a.k.a. Aspira Academy).

8.     Defendant Camelot Academy (a.k.a. Camelot Education) is a for-profit education corporation or other entity organized and existing under and by virtue of the laws of the State of Texas with its corporate headquarters located at 11629 Manchaca Road, Suite B, Austin, Texas 78748.

9.     At all times material hereto, Defendant Camelot Academy was contracted by ASPIRA Inc. to operate a transition program (a.k.a. Aspira Academy), which was a behavioral support program, in the basement level of the Olney High School building located at 100 West Duncannon Ave., Philadelphia, Pennsylvania 19120.

10.     At all times material hereto, ASPIRA Inc., managed five charter schools for the School District of Philadelphia.  Over the course of the three-year period ending June 30, 2016, the ASPIRA Inc., collectively received Commonwealth funds of approximately $160 million.

11.     An audit conducted by the Commonwealth of Pennsylvania, in 2018, found that the same business office at ASPIRA, Inc.'s headquarters managed all of those funds along with its own revenues and expenditures and those of its related property-holding companies. As a result, ASPIRA, Inc. paid itself millions of dollars from the schools' public funds for the wide range of services it provided to the schools, and it did so without a sufficient check on its own control.

12.     At all times material hereto, Defendant Camelot Academy owned, operated, maintained, was responsible for, and/or otherwise controlled the transition program (a.k.a. Aspira

Case ID: 190101988

Academy), which was a behavioral support program, in the basement level of the Olney High School building.

13.     According to its website, the Camelot Academy is supposed to be a temporary disciplinary placement for students attending ASPIRA's Onley Charter High School in Philadelphia, Pennsylvania. Students in this program are supposed to return to their home schools with improved behavior, attendance, and academics.

14.     As a result of its contract with ASPIRA Inc., Defendant Camelot Academy was paid millions of dollars.  For example, in 2017, Defendant Camelot Academy was paid $1,107,668.00 to operate the transition program (a.k.a. Aspira Academy).

15.     At all times material hereto, Defendant Camelot Academy created, adopted and enforced rules and regulations for the management of school affairs and the conduct and of employees and students assigned to the transition program.

16.     An audit conducted by the Commonwealth of Pennsylvania, in 2018, found that there were an array of issues related to the authorization and oversight of the Camelot Academy (a.k.a. Aspira Academy), including the following:

    a.     The contracts governing the Camelot Academy (a.k.a. Aspira Academy) educational support program were not board-authorized and contained flawed terms, resulting in a lack of transparency about the costs borne by the District.

    b.     The procurement of the contracts related to the accelerated and transition programs, which cost $5.2 million in the three-year review period, was not open and public, and gave Aspira, Inc. an advantage in its submission of price quotes. Also, because of related-party issues, the contracts may have violated the Ethics Act.

    c.     In each of the fiscal years 2014 through 2016, the accelerated and transition program services were provided as part of a single contract with no delineation between the cost of each program, which reduced accountability.

    d.     In fiscal year 2015, the cost of the contract with Defendant Camelot jumped to $2.2 million, a 62 percent increase in costs from the prior year. Management could not

Case ID: 190101988

provide an explanation for this spike in cost. (The subsequent lower cost in fiscal year 2016 was due to the lower program capacity limits established in that year's contract.)

e.     The fiscal year 2016 contract with Defendant Camelot was only signed by the CEO of Aspira, Inc. and the CEO of Camelot, not by any representative of the school or board member, again hindering transparency and accountability in the use of public funds for education.

f.     The education services contracts with Camelot in fiscal years 2016 and 2017 and the contract with Aspira, Inc. in 2017 may have violated the Ethics Act because of conflicts of interest.

g.     The Superintendent hired by Aspira, Inc., whose appointment was announced at the February 2015 board meeting, was an immediate family member of a senior executive of Camelot that provided education support services throughout the three-year review period and continuing through 2017.  Consequently, this relationship should have been disclosed in an open and public forum, and public bids should have been solicited to encourage arms-length transactions, and to comply with the Ethics Act.

h.     Also, the signatures on the 2016 related party vendor contract were undated with no witness signatures. We found no evidence in Board meeting minutes that Olney's Board approved any of the contracts related to its accelerated and transition programs. Even the 2017 contract with Aspira, Inc. was not board approved.

17.     Defendant John Doe is an adult citizen of the Commonwealth of Pennsylvania who assaulted the minor Plaintiff A.J., his identify is known to Defendants.  At all relevant times, Defendant John Doe was a security guard at the Camelot Academy (a.k.a. Aspira Academy).

18.     At all relevant times the minor Plaintiff A.J. was owed a duty of care in terms of his safety and well-being while attending school at the Camelot Academy (a.k.a. Aspira Academy).

## II.     FACTS

19.     Minor-Plaintiff, for the 2016-2017 school year, was a student at the Aspira Charter High School (formerly known as Olney High School).

Case ID: 190101988

20.     It should be noted that, prior to the events described below, the minor-Plaintiff was actively involved in numerous extra-curricular and sports activities at his high school.  For example, the minor-Plaintiff was on the football, wrestling, and volleyball teams.

21.     It should be noted that, prior to the events described below, the minor-Plaintiff's cumulative grade point average for the first two grading quarters of the 2016-2017 school year was 89% and 82%.

22.     On January 24, 2017, minor-Plaintiff was in class at Aspira Charter High School (formerly known as Olney High School).

23.     At the end of class, pursuant to class and school policy, minor-Plaintiff asked to be dismissed so that he could use the restroom.

24.     Unfortunately, at the time the regular teacher was not present and the school had decided to use a security guard to stand in as a substitute teacher.

25.     In light of the urgency of the situation, the minor-Plaintiff A.J. begged to be allowed to use the restroom and even offered to leave his backpack to ensure that he would return to the classroom.

26.     In response the substitute teacher pushed the minor-Plaintiff A.J. and called for additional security.

27.     When Defendant John Doe, who is believed to be another member of school security, arrived he got into a verbal altercation with the minor-Plaintiff and ultimately challenged the minor-Plaintiff A.J. to a fist fight.

28.     Defendant John Doe grabbed minor-Plaintiff A.J. and attempted to push him into the hallway.

Case ID: 190101988

29.     Defendant John Doe grabbed minor-Plaintiff A.J. and attempted to push him into a storage closet where he had covered the camera with his jacket or where there was no camera so that he could continue his assault.

30.     After stopping his assault on the minor-Plaintiff, Defendant John Doe pushed the minor-Plaintiff to the ground and placed him in handcuffs with the hands behind the back.  Once handcuffed and with the sole purpose of inflicting pain, Defendant John Doe repeatedly lifted and dropped the minor-Plaintiff by the arms.

31.     It was only due to the intervention of a female security guard that Defendant John Doe's assault on the minor-Plaintiff A.J. was stopped.

32.     As a result of the assault the minor-Plaintiff suffered the following injuries:

    a.   Assault, with its attendant physical and mental signs, symptoms, and sequellae;

    b.   Anxiety;

    c.   Fear and fright;

    d.   Mental anguish;

    e.   Post-Traumatic Stress Disorder, with its attendant physical and mental signs, symptoms, and sequellae;

    f.   Past and future physical pain and suffering;

    g.   Past and future mental pain and suffering;

    h.   Past and future loss of life's pleasures;

    i.   Past and future humiliation;

    j.   Past and future embarrassment and disfigurement;

    k.   Past and future lost earnings and lost earning capacity;

    l.   Past and future medical expenses;

    m.   Past and future noneconomic loss; and

    n.   Such other ills and injuries set forth in the medical records and which will be set forth, and more fully described, as this lawsuit continues.

Case ID: 190101988

33.     The above incident was caught on video, which the Defendants refused to allow the Plaintiff to review.

34.     At all times material hereto, Defendant School District of Philadelphia's policies have provided that the principal is responsible for the safety of pupils during the school day.

35.     At all times material hereto, Defendant School District of Philadelphia's policies have provided that, under no circumstances may corporal punishment is defined as physically punishing a student for an infraction of the discipline policy.

36.     Use of corporal punishment is prohibited.

37.     At all times material hereto, Defendant School District of Philadelphia's policies define corporal punishment as "a form of physical discipline that is intended to cause pain and fear and in which a student is spanked, paddled or hit on any part of the body with a hand or instrument."

38.     In retaliation and in an attempt to cover up the assault, Defendants transferred minor-Plaintiff A.J. and Defendant John Doe to the Camelot Academy in the basement of Onley.

39.     Defendant John Doe continued to harass and bully the minor-Plaintiff A.J.

40.     The minor-Plaintiff A.J.'s grandmother informed the Defendants of the harassment and bullying.  Defendants did nothing to fix the situation.

40.     Finally, the harassment and bullying caused minor-Plaintiff A.J. to drop out of school.

Case ID: 190101988

**III.   COUNTS**

**COUNT I: NEGLIGENCE**
**Plaintiff Elba Jimenez, et al. v. Defendant School District of Philadelphia**
**and Defendant Camelot Education**

41.    The preceding paragraphs are incorporated by reference as though set forth in their entirety.

42.    At relevant time, the District is responsible to provide security and safe guards for children attending Philadelphia area schools and restrict access to visitors, invitees and others to Olney High School campus and property.

43.    Defendant School District of Philadelphia was negligent as follows:

   (a)    failing to provide adequate security to protect students, visitors and invitees, including A.J.;

   (b)    failure to have security personnel appropriate to the task of protecting students, visitors and invitees, including A.J.;

   (c)    failure to have security personnel respond to the assault and battery that occurred on January 24, 2017;

   (d)    failure to protect A.J. from harm while she was attending Olney High School campus;

   (e)    failure to take all reasonable steps necessary to protect the health and well-being of A.J. while attending Olney High School campus;

   (f)    failure to take all reasonable steps to prevent visitors from assaulting students on the Olney High School campus; and

   (g)    failure to take all reasonable and necessary steps to prevent personnel of Olney High School from assaulting A.J.

44.    As a result of the negligence of Defendant School District of Philadelphia, Plaintiff A.J. suffered the injuries and losses described above.

45.    The negligence of Olney High School was a substantial factor in causing the injuries and losses sustained by A.J.

Case ID: 190101988

WHEREFORE, Plaintiff demands judgment against defendant and seeks compensatory and punitive damages in an amount greater than $150,000.00 (Fifty Thousand dollars) and in excess of mandatory arbitration limits, exclusive of any interest and costs.

## COUNT II: CIVIL RIGHTS
### Plaintiff Elba Jimenez, et al. v. Defendant School District of Philadelphia <u>and Defendant Camelot Education</u>

46.    The preceding paragraphs are incorporated by reference as though set forth in their entirety.

47.    Defendant School District of Philadelphia is a municipal entity that is subject to suit pursuant to 42 U.S.C. § 1983 and its equivalent under the Pennsylvania Constitution.

48.    Defendant School District of Philadelphia's constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, et seq. or 42 Pa.C.S. § 8521, et seq.

49.    Defendant Camelot Education's constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, et seq. or 42 Pa.C.S. § 8521, el seq.

50.    Defendants School District of Philadelphia and Defendant Camelot Education violated A.J.'s substantive due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States.

51.    At all times material hereto, Defendants School District of Philadelphia and Camelot Education acted under color of state law.

52.    At all times material hereto, Defendant School District of Philadelphia acted under color of state law by and through their agents, ostensible agents, and/or employees.

53.    The specific harm to which Defendants School District of Philadelphia and Camelot Education exposed A.J. was foreseeable and direct in that they were aware that giving

Case ID: 190101988

access to pupils to unidentified and otherwise unverified adults would result in harm to those pupils, including but not limited to physical and sexual assault.

54.     Defendant School District of Philadelphia's willful actions in allowing students to be supervised and educated by security personnel instead of certified teachers created a degree of culpability that shocks the conscience.

55.     Defendant School District of Philadelphia and Defendant Camelot Education acted in willful disregard to the safety of A.J. when they allowed security personnel to supervise his classroom.

56.     Defendant School District of Philadelphia's self-described commitment to create a safe, positive environment for all students formed a relationship such that A.J. was a foreseeable victim of Defendants School District of Philadelphia and Camelot Education's acts.

57.     Defendants School District of Philadelphia and Camelot Education's acts constitute a "state-created danger," rendering them liable to A.J. for violation of his civil rights.

58.     Despite their awareness of the risk of pupil assault by unidentified individuals, policymakers within Defendant School District of Philadelphia either deliberately chose not to train their employees, including Defendant Ms. Burns, regarding policies for access to pupils during the school day, or acquiesced in a longstanding practice or custom of inaction in this regard.

59.     Despite their awareness of the risk of pupil assault by security personnel, policymakers within Defendant School District of Philadelphia and Camelot Education Commission either deliberately chose not to supervise their employees or acquiesced in a longstanding practice or custom of inaction in this regard.

Case ID: 190101988

60.     The constitutional rights violated by Defendants School District of Philadelphia and Camelot consisted of liberty, privacy, and bodily integrity.

61.     Defendants School District of Philadelphia and Camelot Education acted intentionally or with deliberate indifference to the rights of A.J.

62.     As a direct result of the actions of Defendants as set forth above, A.J. was caused to suffer the injuries set forth in paragraph 23.

WHEREFORE, Plaintiff demands judgment against defendants School District of Philadelphia and Ms. Burns, and compensatory damages, jointly and severally, together with attorney fees and costs, and pre and post judgment interest.

## COUNT III: ASSAULT AND/OR BATTERY

### Plaintiff Elba Jimenez, et al. v. All Defendants

63.     The preceding paragraphs are incorporated by reference as though set forth in their entirety.

64.     Defendants School District of Philadelphia and Camelot Education allowed personnel to physically assault A.J., as described above, intentionally, directly and proximately causing physical and emotional injury to him.

65.     As a direct result of Defendant School District of Philadelphia and Camelot Education's intentional, reckless and/or negligent conduct Plaintiff sustained the following damages:

  (a)     Medical expenses reasonably incurred for the diagnosis, treatment and attempted cure of her injuries, and the expense of additional treatment she will reasonably incur in the future for the treatment and attempted cure of continuing injuries;

  (b)     Physical pain, mental anguish, discomfort, inconvenience and distress that he has endured and will continue to endure in the future;

Case ID: 190101988

(c)     Lost wages; and

(d)     Past, present and future loss of his ability to enjoy the pleasures of life.

66.     The above-described conduct of Defendant School District of Philadelphia and Camelot Education constitutes an assault, battery, harassment, bullying against Plaintiff A.J.

67.     The above-described conduct of Defendant John Doe was outrageous, and engaged in with substantial certainty that physically assaulting Plaintiff A.J. with his body would cause his serious and substantial bodily and emotional harm.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant for compensatory and punitive damages in an amount greater than $150,000.00, together with interest, costs, attorney's fees and such other relief as this Court deems just and proper.

FRIEWALD LAW, P.C.

BY:     _____
GLENN A. ELLIS, ESQUIRE
Counsel for Plaintiff
1500 Walnut Street, 18th Floor
Philadelphia, PA 19102
(215) 875-8000

Dated: August 28, 2019

Case ID: 190101988

## **VERIFICATION**

I, Glenn A. Ellis, attorney for Plaintiff in the foregoing action, hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and/or belief.  I understand that false statements hereunder made are subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

GLENN A. ELLIS, ESQUIRE

Date:  August 27, 2019

Case ID: 190101988